THE PEOPLE *ex rel.* George R. Davis, Collector,

*v.*

THE CITY OF CHICAGO.

*Filed at Ottawa May 9, 1888.*

1. TAXATION—*exemption—strict construction.* All property, of every description, in the State, except such as has been specifically exempted, is required to bear its just proportion of the burden of taxation. All laws claimed as exempting property from taxation will be subject to a strict construction by the courts, and nothing will be held to come within the exemption which does not clearly appear to be so.

2. SAME—*lands belonging to a city—whether subject to taxation.* Lands owned by an incorporated city, not applicable to use for municipal purposes, although taken in part payment of corporate funds which an officer of the city had embezzled or appropriated to his own use, and which funds had been raised by taxation, are subject to taxation, the same as lands of private persons.

3. The fact that the funds of the city which had been embezzled, and which are represented by the lands, are not taxable, can make no difference,

as those funds were to be used in defraying the expenses of the city, and were not intended to be held for a number of years and placed at interest. Had the funds been so intended to be held and used, no reason is perceived why they would not themselves have been subject to taxation.

APPEAL from the County Court of Cook county; the Hon. RICHARD PRENDERGAST, Judge, presiding.

This was an application by the tax collector of Cook county, for judgment against certain lots and lands for the taxes and special assessments due thereon. To this application the city of Chicago appeared, and filed objections as to the lands involved in this controversy. The court below sustained the objections, and refused to render judgment as asked, and the collector brings the case here by appeal.

Messrs. WHITEHEAD & PICKARD, and Mr. THOMAS H. HOOD, for the appellant.

Mr. JOHN W. GREEN, and Mr. THEODORE BRENTANO, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

The question presented by this record is, whether the lands owned by the city of Chicago, situated in the towns of Cicero and Riverside, and commonly known as the "Gage Farm," are exempt from taxation.

The facts in regard to the manner the city acquired and holds the lands, are agreed upon as follows: . "That in the year 1871, David A. Gage was city treasurer of the city of Chicago; that a defalcation having been made by him, to the amount of $507,703.56 of city funds, such as school, water, etc., (the amount of school fund taken or embezzled being $47,947.38,) in part adjustment of such defalcation the said lands were conveyed by him to one George Taylor, to have and hold the same in trust for the city of Chicago; that afterwards, the said

George Taylor, in the discharge of his duty as said trustee, conveyed the said lands to the city of Chicago, to replace, *pro tanto,* the money of the city for which the defaulting city treasurer has failed to account; that the title to said lands was received by the city to liquidate, in part, the said indebtedness from said Gage to the said city; that the city money which this property represents, amounts, in large part, of school funds, and the rental obtained by the city from the property is divided up and credited to the several funds which said property represents; that when the property is sold, as it must be, eventually, under the provision of the trust, the proceeds of the sales must be divided among the several funds of the city which were depleted by the defalcations of the said Gage, and that the defalcation largely exceeds the value of all the property held by the city to meet the same; that the said lands lie wholly in the corporate limits of the towns of Riverside and Cicero, and outside the corporate limits of the city of Chicago; that part, only, of said lands are leased by the city of Chicago to certain parties, for a stipulated yearly rental of $300, and that such portions of said lands as are so leased are used by the tenants for farm purposes, and that such portions as are not leased are vacant and unoccupied lands; that the revenue derived from the lands is used and applied as above stated, and that the lands rented by the city are described as follows: (describing lands.) It is understood and agreed, however, that the funds above referred to were derived either by special assessment or taxation, including the school funds above mentioned; that said school funds are no part of the funds derived from the State for school purposes."

Section 3, of article 9, of our constitution, declares: "The property of the State, counties, and other municipal corporations, both real and personal, and such other property as may be used exclusively for agricultural and horticultural societies, for school, religious, cemetery and charitable purposes, may be exempted from taxation, but such exemption shall be only

by general law." Under this provision of the constitution the
legislature incorporated in the Revenue law a section, under
which certain property is exempt from taxation. See par. 2,
sec. 2, Starr & Curtis, 2027.

Paragraph 1 of the statute cited above, declares "that the
property named in this section shall be assessed and taxed,
except so much thereof as may be in this act exempted." Then
follows the property, and first, "all real and personal property
in this State." Under the plain language here employed,
the lands involved in this suit are liable to taxation unless
exempted by some provision which follows. We will, then,
examine those provisions which have relation to property be-
longing to cities and incorporated towns, in order to determine
whether the lands involved fall within them. Under clause 6
of the article, all property belonging to a town, village or city,
used exclusively for the maintenance of the poor, and all pub-
lic buildings belonging to a city or incorporated town, with
the ground on which such buildings are erected, not exceeding
ten acres, is exempt. Under clause 8, all fire-engines, with
the building used for the safe keeping thereof, and the lot on
which the building is located, when belonging to any city, town
or village, are exempt. Under clause 9, all market-houses,
public squares, or other public grounds used exclusively for
public purposes, all works, machinery and fixtures belonging
exclusively to any town, village or city, and used exclusively
for conveying water to such town, village or city, are exempt.
We find no other provision of the statute exempting from tax-
ation any other property held or owned by a city or incorpo-
rated town, and if there is any other provision, it has escaped
our attention.

No argument is needed to show that lands like the Gage
farm, held or owned by a city or incorporated town, do not
fall within any one of the provisions of the statute above, ex-
empting property from taxation. Indeed, we do not understand
that counsel for the city claim that the property falls within

any one clause of the statute which we have cited, but, to use their own language, "the position of the city of Chicago in the case at bar is, that the property is public land, held by the city exclusively for public purposes. The land represents and takes the place of so much public money. It is held by the city, not in its 'social or commercial capacity' as a private corporation, and for its own benefit, but it is held by the municipality in its governmental capacity, as one of the agencies of State government." It is true, the city obtained this property from Gage in payment of money he had appropriated to his own use, which had been raised by taxation; but that fact does not exempt the property from taxation. All property, of every description, in the State, except such as has been specifically exempted, is required to bear its just proportion of the burden of taxation, and, as held in *Matter of Charles P. Swigert, Auditor,* 119 Ill. 83, all laws exempting property from taxation will be subject to a strict construction by the courts, when called upon to enforce them, and hence nothing will be held to come within the exemption which does not clearly appear to be so, and all reasonable intendments will be indulged in favor of the State. The difficulty with the position of appellee is, that the legislature has nowhere provided that a city or incorporated town may acquire a large tract of land, and hold it for years free from taxation. There is a necessity for exempting from taxation the public buildings of a city, and the grounds upon which they stand, not exceeding ten acres; but why a large tract of land located remote from the city should be held by a city free from the burdens of taxation for years, it may be difficult to understand.

*City of Chicago* v. *The People,* 80 Ill. 384, has been cited as authority, but the case has no bearing here. In that case it was held, where moneys belonging to the school fund, derived from the sale of the 16th section, are loaned on mortgage security, and the title to real estate is thus acquired on foreclosure of such mortgage, and held, in the name of the city,

for school purposes, such lands are not subject to taxation. The decision is predicated on the ground that real estate thus acquired in fact belongs to the State, in trust for school purposes, which is expressly exempted from taxation by section 2, *supra.* Under the stipulation of facts shown by the record, the school funds which went into the lands here involved were not derived from the sale of section 16, but arose from general taxation. The fact, therefore, that a portion of the money which paid for the lands was school funds, has no bearing on the case.

It is also suggested that the funds embezzled by the city treasurer were not, and would not be, subject to taxation had they remained in the treasury, and as these lands represent the embezzled funds, they are also exempt. But the funds which were in the treasurer's hands were not placed there to remain as a permanent fund. These funds were raised to be paid out to defray the expenses of the city, and of course it was not a fund liable to taxation; but if a city had the power to accumulate a large fund, and hold it, from year to year, in its treasury, or keep it at interest, no reason is perceived why such fund might not be taxed. These lands have been held for a number of years. It is not claimed that they are now, or ever will be, needed for any municipal use of the city. On the other hand, they are held for profit,—for the annual increase in price,—and we perceive no reason why the city should not pay taxes where lands are so held, in like manner as an individual who purchases and holds lands as an investment.

The judgment will be reversed, and the cause remanded for further proceedings consistent with this opinion.

*Judgment reversed.*